NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT RICKETT,**

*Petitioner-Appellant,*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

*Respondent-Appellee.*

---

2011-5038

---

Appeal from the United States Court of Federal Claims in case no.01-VV-128, Judge George W. Miller.

---

Decided: November 18, 2011

---

CLIFFORD J. SHOEMAKER, Shoemaker & Associates, of Vienna, Virginia, argued for petitioner-appellant.

HEATHER L. PEARLMAN, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, MARK W. ROGERS, Acting Director, VINCENT J.

MATANOSKI, Acting Deputy Director, and GABRIELLE M. FIELDING, Assistant Director.

———————————

Before NEWMAN, O'MALLEY, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Robert Rickett appeals from a decision of the United States Court of Federal Claims ("Court of Federal Claims"), affirming the denial of his claim that the Hepatitis B vaccine caused his fibromyalgia ("FM"). We have considered Mr. Rickett's arguments and for the reasons set forth below, we affirm the decision of the Court of Federal Claims.

I

BACKGROUND

Mr. Rickett has a family history of FM and has suffered various medical problems throughout his life. On March 10, 1998, Mr. Rickett received the first of three injections of the Hepatitis B vaccine. He alleges that shortly thereafter, he developed persistent diarrhea. The record is unclear as to when the diarrhea began and how long it persisted. Mr. Rickett's expert, Dr. Joseph Bellanti, testified that the diarrhea may have been the result of irritable bowel syndrome ("IBS"), which is associated with FM. Mr. Rickett was never diagnosed with IBS. Nor did he seek medical attention for the diarrhea. Indeed, he does not appear to have reported it to a physician until March 9, 1999, when he told a physician that he "developed diarrhea over the summer" of 1998. A339.

Mr. Rickett received his second injection of the Hepatitis B vaccine on April 8, 1998. He testified that within a week of this vaccination, he could not lift his left arm 90 degrees and had arm and shoulder pain. However, a

medical record dated April 24, 1998, indicates that Mr. Rickett's right arm and shoulder pain had begun two to three weeks earlier, and his left side pain had begun on April 23, 1998. The record further indicates that Mr. Rickett had a "full range of motion" and no point tenderness in either shoulder. A206. On the basis of this medical record, the Special Master concluded that Mr. Rickett's right side pain began on or about April 3 to April 10, 1998, several days of which preceded his April 8 vaccination.

Mr. Rickett alleges that his pain continued until his third and final injection of the Hepatitis B vaccine on September 22, 1998, and that shortly thereafter he experienced, among other things, pain and headaches. According to a medical record dated September 24, 1998, Mr. Rickett sought medical attention for anxiety and somatic complaints.

On October 28, 1998, Mr. Rickett saw Dr. Steven Keifer, who performed a follow-up evaluation related to back surgery that Mr. Rickett had undergone. During that visit, Mr. Rickett reported developing cramping and burning in his right thigh and calf "two months ago" and burning neck pain with some extension into the intrascapular region and shoulders one month earlier. A173. Dr. Kiefer suspected that Mr. Rickett had probable degenerative cervical spine disease and degenerative lumbar disc disease, status post lumbar discectomy. He did not link Mr. Rickett's Hepatitis B vaccination to his condition.

On March 9, 1999, Mr. Rickett visited Dr. Paul Goldfarb. A medical record from the visit indicates that Mr. Rickett reported developing right arm pain in the spring of 1998 and diarrhea that summer. Mr. Rickett complained of widespread chronic pain, diarrhea, sleep prob-

lems, and headaches. According to the medical record, he explained that he had seen on television that the Hepatitis B vaccine had been linked to problems and that "[h]e had just finished his course [with the vaccine] when he developed aching all over." A340. However, Mr. Rickett later testified that he did not recall telling Dr. Goldfarb about the television show. Although Dr. Goldfarb suspected that Mr. Rickett had FM, he tried to reassure Mr. Rickett that he did not believe the FM and vaccine were related.

From March 1999 to the present, Mr. Rickett has seen various physicians for numerous medical conditions. Although no treating physician has stated that his Hepatitis B vaccine caused his FM and at least two have doubted such a connection, since March 1999 Mr. Rickett has consistently claimed that the vaccine caused his FM.

## II

On March 8, 2001, Mr. Rickett filed a petition, alleging that his vaccination had caused his FM.[1] Special Master John Edwards conducted a hearing on February 21, 2008, at which Mr. Rickett and the parties' respective experts testified. On August 1, 2008, the case was reassigned to Chief Special Master Gary Golkiewicz, who conducted a hearing on December 12, 2008, at which only Mr. Rickett testified.

On May 26, 2010, the Chief Special Master denied Mr. Rickett's claim because Mr. Rickett failed to demonstrate the three prongs of causation-in-fact as articulated in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274,

---

[1] Mr. Rickett filed amended petitions on July 2, 2004, and December 13, 2006.

1278 (Fed. Cir. 2005). The Chief Special Master explained:

> Neither petitioner's vague and occasionally ephemeral medical theories, nor his expert's unsubstantiated conclusion of challenge-rechallenge satisfy the *Althen* prongs. Specifically, petitioner's case is almost entirely lacking in evidence regarding an appropriate temporal relationship necessary to satisfy the third prong of *Althen*.

A91.

The Chief Special Master found that the factual record did not support Dr. Bellanti's challenge-rechallenge model in part because Dr. Bellanti's expert opinion relied upon Mr. Rickett's testimony as to the timing of the onset of his symptoms, testimony that was inconsistent with the medical records. The Chief Special Master further explained, "Dr. Bellanti's unsupported, often fluctuating testimony undercuts the persuasiveness of his opinion. His testimony was punctuated by broad, strong statements, which he later qualifies or withdraws completely, related to the vaccine causing petitioner's FM." A94.

First, Dr. Bellanti appears to have opined that the diarrhea following the first vaccination was the initial challenge event, but later he stated that the diarrhea being a challenge event was "more speculative than real." A1004. Dr. Bellanti then posited that the right side pain following the second vaccination was the challenge event, but when it was pointed out that a medical record indicated that the right side pain could have begun prior to the second vaccination, Dr. Bellanti offered no explanation; instead, he asserted that the left side pain that had begun on or about April 23, 1998 was the challenge event. Dr. Bellanti's supplemental expert report did not "further address the possibility of the right-sided pain beginning

before the vaccine was administered" or "discuss the reliance on the left-sided pain that he pointed to in testimony." A99. The report simply states that if Mr. Rickett's right side pain preceded the second vaccination, then Dr. Bellanti "cannot offer a causal opinion." A905.

The Chief Special Master further observed:

During testimony, Dr. Bellanti also discussed a truncated latent period . . . and "heightened response to a vaccine on a second encounter" . . . [the] truncated latent period was never discussed regarding petitioner's medical history and the heightened response was only discussed as a conclusory statement by petitioner's expert. The undersigned does note that Dr. Bellanti never defined limits to the time frame in which the reactions would or should occur. . . .

***

Dr. Bellanti offered no justification or reasoning for the time between petitioner's second Hep B vaccine and the left or right arm and shoulder pains. He likewise failed to offer evidence justifying the time between his proclaimed rechallenge event and the third Hep B vaccine, which was the history of pain reported on October 28, 1998 . . .

***

During his testimony, Dr. Bellanti stated the reason for this belief that petitioner's case was challenge-rechallenge was due to the temporal association between the vaccine and petitioner's symptoms. . . . the temporal relationship is the only basis given for his view regarding challenge-rechallenge, which is insufficient to prove causation in a Vaccine Act case.

A97-98, 101.

The Chief Special Master also relied upon the testimony of the Government's expert, Dr. Alan Brenner, who stated that most FM symptoms do not abate once they have begun. According to Dr. Brenner, Mr. Rickett's testimony that his symptoms waxed and waned undercut Dr. Bellanti's opinion regarding the existence of challenge-rechallenge.

On June 24, 2010, Mr. Rickett filed a petition for review before the Court of Federal Claims, arguing that the Chief Special Master erred by: (i) ignoring his prior decision in *Lee v. Sec'y of Health & Human Servs.*, 2005 U.S. Claims LEXIS 132 (Fed. Cl. Apr. 8, 2005); (ii) discounting Mr. Rickett's account of events*;* and (iii) rejecting the applicability of the challenge-rechallenge effect.

On November 5, 2010, Judge George Miller of the Court of Federal Claims denied Mr. Rickett's motion for review. Specifically, Judge Miller noted that because of inconsistencies between the medical records and Mr. Rickett's affidavit and testimony, it was not error for the Special Master to rely upon the medical records rather than Mr. Rickett's account of events. Judge Miller further held that the Special Master did not err by reaching a different outcome than in *Lee* because special masters are not bound by their earlier decisions or those of other special masters. Judge Miller further found that the "differing factual records in the two cases and the proof in the *Lee* case of a distinct medical theory of causation" warranted the opposite outcomes. A40. Finally, Judge Miller determined that the Special Master's decision that Mr. Rickett's case did not "fit the challenge-rechallenge model" was rational and supported by the record. A33.

## III

### STANDARD OF REVIEW

This court reviews questions of law de novo and factual findings for clear error under an arbitrary and capricious standard. *See Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed. Cir. 2010), *reh'g denied*, 2010 U.S. App. LEXIS 26926 (Fed. Cir. Dec. 8, 2010); *Althen*, 418 F.3d at 1278 ("[W]e review the trial court's factual findings for clear error."). The arbitrary and capricious test is a highly deferential standard of review. *See Sharpnack v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 457, 1993 U.S. Claims LEXIS 348, *6 (1993) (internal citations omitted), *aff'd*, 17 F.3d 1442 (Fed. Cir. 1994). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.* at *6-7.

### CAUSATION-IN-FACT

Under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act"), a petitioner may establish causation in two ways. *See Althen*, 418 F.3d at 1278. Causation is presumed if a petitioner demonstrates that the injury is listed in and meets the requirements of the Vaccine Injury Table. *See* 42 U.S.C. § 300aa-14; *Althen*, 418 F.3d at 1278. Where the alleged injury is not listed in the Vaccine Injury Table, a petitioner must establish causation-in-fact. *See* 42 U.S.C. § 300aa-13(a)(1), -11(c)(1)(C)(ii)(I); *Althen*, 418 F.3d at 1278.

In *Althen*, the Federal Circuit articulated a petitioner's burden of proof as to causation-in-fact:

> Concisely stated, [a petitioner's] burden is to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury. If [a petitioner] satisfies this burden, she is 'entitled to recover unless the [government] shows, also by a preponderance of evidence, that the injury was in fact caused by factors unrelated to the vaccine.'

*Id.* at 1278 (internal citation omitted).

"Although probative, neither a mere showing of a proximate temporal relationship between vaccination and injury, nor a simplistic elimination of other potential causes of the injury suffices, without more, to meet the burden of showing actual causation." *Id.* Rather, the *Althen* prongs "must cumulatively show that the vaccination was a 'but-for cause' of the harm, rather than just an insubstantial contributor in, or one among several possible causes of, the harm." *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006), *reh'g denied*, 2006 U.S. App. LEXIS 28907 (Fed. Cir. Oct. 24, 2006), *cert. denied*, 551 U.S. 1102 (2007). In other words, to prevail, a petitioner must show that it was more probable than not that the vaccine caused the injury. *Althen*, 418 F.3d at 1279.

As such, a petitioner is not required to show that the vaccine was the sole or predominant cause of the injury; nor must a petitioner produce particular types of evidence or prove causation as a matter of scientific or medical certainty. *See, e.g., Capizzano v. Sec'y of Health & Human*

*Servs.*, 440 F.3d 1317, 1325 (Fed. Cir. 2006) ("requiring either epidemiologic studies, rechallenge, the presence of pathological markers or genetic disposition, or general acceptance in the scientific or medical communities to establish a logical sequence of cause and effect is contrary to what we said in *Althen III*."); *Althen*, 418 F.3d at 1279-80 (explaining that a petitioner may demonstrate causation-in-fact with circumstantial evidence); *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548-49 (Fed. Cir. 1994) ("The determination of causation in fact under the Vaccine Act involves ascertaining whether a sequence of cause and effect is 'logical' and legally probable, not medically or scientifically certain."). Medical literature is not required. *Althen*, 418 F.3d at 1280. However, recorded statements of treating physicians are particularly probative. *Capizzano*, 440 F.3d at 1326. Close calls regarding causation are resolved in favor of injured claimants. *Althen*, 418 F.3d at 1280.

ANALYSIS

On appeal, Mr. Rickett lodges four primary objections. First, Mr. Rickett claims that it was error to rely upon Mr. Rickett's medical records, rather than his testimony. Second, Mr. Rickett argues that it was error to discount Dr. Bellanti's expert testimony and reports regarding challenge-rechallenge to the extent they were based on Mr. Rickett's testimony. Third, Mr. Rickett contends that the Special Master arbitrarily and capriciously rejected a medical theory that he had accepted in another vaccine case arising from a similar factual predicate. Finally, Mr. Rickett asserts that he demonstrated causation-in-fact.

As to the first issue, it was not error for the Special Master to rely upon Mr. Rickett's medical records rather than his testimony where the two were inconsistent. Although *Althen* does not require a petitioner to proffer

both expert testimony and medical records to demonstrate causation, where, as here, a petitioner offers both forms of evidence and they are inconsistent, a special master may give greater weight to the medical records. As this court explained in *Cucuras v. Sec'y of Health & Human Servs.*:

> Neither the trial court nor the special master erred in their reliance on medical records to determine the onset of injury. The Vaccine Act expressly bars the court or a special master from finding a table injury "based on the claims of the petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Moreover the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight. *United States v. United States Gypsum Co.*, 333 U.S. 364, 396, 92 L. Ed. 746, 68 S. Ct. 525 (1947). . . . Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

993 F.2d 1525, 1528 (Fed. Cir. 1993).

For similar reasons, it was not error for the Special Master to assign less weight to Dr. Bellanti's conclusion regarding challenge-rechallenge to the extent it hinged upon Mr. Rickett's testimony that was inconsistent with the medical records. Dr. Bellanti initially relied upon Mr. Rickett's assertion that his diarrhea began almost immediately after his first vaccination to opine that the diarrhea may have been the challenge event but later stated

that the diarrhea being a challenge event was "more speculative than real." A1004. Furthermore, a medical record indicates that Mr. Rickett reported developing diarrhea during the summer, not the spring, of 1998. Dr. Bellanti also relied upon Mr. Rickett's assertion that he developed right arm and shoulder pain shortly after his April 8, 1998 vaccination to suggest that Mr. Rickett's right side pain could have been a challenge event. According to a medical record dated April 24, 1998, however, Mr. Rickett reported developing right side pain two to three weeks earlier—several days of which predate his second vaccination. When asked whether the right side pain could be a challenge event if it began before the second vaccination, Dr. Bellanti offered no explanation; instead, he claimed that the left side pain that Mr. Rickett reported developing on April 23, 1998, was the challenge event. In his supplemental expert report, Dr. Bellanti stated that if the right side pain began prior to the second injection, he could not offer a causal opinion.

As to the third issue, the Special Master was not bound by his decision in *Lee*. It is well-settled that "[s]pecial masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand." *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999).

Moreover, the Special Master did not err because *Lee* is distinguishable. In *Lee*, the central issue was whether the Hepatitis B vaccine could cause headaches that might have triggered Lee's FM. Lee proffered medical literature and treating physician testimony in support of her claim. Here, Mr. Rickett claimed that the Hepatitis B vaccine caused his FM, and he offered no treating physician testimony to demonstrate causation. The medical records

indicate that at least two physicians doubted a causal connection.

A special master evaluates the utility of evidence differently in "light of all facts relevant in a specific claim." *Sharpnack*, 27 Fed. Cl. 457, 1993 U.S. Claims LEXIS at *13-14. A special master's acceptance of a theory in one case does not require him or her to accept the theory in subsequent cases involving similar facts or the same vaccine. Rather, a different evidentiary record can lead to different outcomes. *Compare Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1370 (Fed. Cir. 2009) *with Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1325-26 (Fed. Cir. 2010). To decide otherwise would effectively require special masters to ignore the impact of ever-changing technological advances and medical breakthroughs that might discredit the plausibility of a formerly accepted theory.

As to the final issue, Mr. Rickett challenges the conclusion that he failed to meet his burden of proof as to *Althen* Prong Three, which requires a showing that the onset of the symptoms of the injury occurred within a medically appropriate period of time after receipt of the vaccine. To the extent this challenge implicates factual findings, our review is limited. *See Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000). We see no reason to disturb the Special Master's findings of fact that Dr. Bellanti's expert reports and testimony did not clearly elucidate the appropriate temporal relationship that one would expect to see as part of the challenge-rechallenge model.

For the foregoing reasons, we affirm.

**AFFIRMED**

## Costs

No costs.