# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 13-217V
Filed: November 25, 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CHARLES MAIKISH and JEANNIE MAIKISH, Parents of S.M., a Minor, | \* |
| | \* |
| | \* |
| Petitioners, | \* |
| | \* |
| v. | \* |
| | \* |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* |
| | \* |
| | \* |
| Respondent. | \* |
| | \* |

Notice to Withdraw Petition;
Table encephalitis; causation
in fact encephalitis; no proof
of either; reaction not lasting
more than six months

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Patricia A. Finn, Piermont, NY, for petitioners.
Lindsay Corliss, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

On March 23, 2009, petitioners filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10–34 (2012), alleging that measles-mumps-rubella ("MMR") vaccine administered on April 1, 2010, caused their daughter S.M. to have a Table encephalitis.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to delete such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall delete such material from public access.

The medical records submitted in this case not only do not support that S.M. had a Table encephalitis, but also do not support the conclusion that S.M. had an encephalitis at all. Moreover, although the medical records do support that S.M. reacted to MMR vaccine, they do not support that her reaction lasted more than six months, which the Vaccine Act requires in order for petitioners to receive compensation.

On November 4, 2013, the undersigned issued an Order to Show Cause why this case should not be dismissed.

On November 25, 2013, petitioners filed a Notice to Withdraw Petition. The undersigned interprets this Notice as a motion to dismiss, and **GRANTS** petitioners' motion.

**FACTS**

S.M. was born on March 23, 2009.

On April 1, 2010, she received MMR vaccine. Med. recs. Ex. 3, at 38.

On April 12, 2010, S.M. saw her pediatrician, Dr. Evelyn S. Ha. Id. at 35. S.M. had had a rash for a week, fever, runny nose, and a hoarse voice. Id. S.M. had not been sleeping well for five nights. Id. Her rash was spreading. Id. She was very clingy and cranky and not eating as well, but she was drinking and wetting her diapers. Id. She seemed to be teething. Id. Her temperature was 98.0 degrees. Id. On physical examination, S.M. had a raised pink rash of her torso and cheeks. Id. Dr. Ha concluded S.M. might be reacting to MMR vaccine, but she likely had a current viral infection. Id.

On April 16, 2010, S.M. returned to Dr. Ha. Id. at 31. She had had a fever of 103 degrees the prior night. Id. That morning, her fever was 101 degrees after she was given Tylenol at 3:00 a.m. Id. She had had diarrhea once a day for the prior six to seven days. Id. S.M. was sneezing and had a runny nose. Id. She had eaten green beans, rice, some cereal, bananas, 14 ounces of milk, four ounces of water, and three ounces of Pedialyte in the last day. Id. She had been wetting her diapers. Id. On physical examination, S.M. had mild audible congestion but no rashes. Id. Her temperature was 102.2 degrees. Id. Her oropharynx was mildly erythematous. Id.

Also on April 16, 2010, S.M. went to Nyack Hospital Emergency Department. Id. at 65–69. Dr. Bruce Henry noted that she had a history of fever for the past week, and her temperature was 103 degrees the day before her visit. Id. at 66. She received MMR vaccine 15 days earlier. Id. Four days previously, she had a runny nose, fever, and a rash. Id. That day, her fever was 103 degrees, and she had loose stool and decreased activity. Id. On physical examination, S.M. had mild distress, but she was not lethargic. Id. She was consolable and maintained eye contact with Dr. Henry. Id. Her temperature rectally was 101.7 degrees. Id. Her tonsils were red. Id. Her strength and tone were good. Id. Her white blood cell count was normal. Id. at 67. There

2

was no clinical evidence of sepsis or meningitis.  Id. at 68.  S.M. appeared well and remained alert and active.  Id.  Her neck was fully supple.  Id.  Dr. Henry prescribed Tylenol 150 mg p.o.  Id.  His clinical impression was viral illness.  Id. at 69.

On April 18, 2010, S.M. saw Dr. Neil Spielsinger, a pediatrician.  Id. at 71–72.  S.M.'s history was a gradual onset of moderate fever, lasting three days without improving.  Id. at 71.  She had had a rash and fever intermittently for a while.  Id.  She also had a runny nose and nasal congestion.  Id.  On physical examination, S.M. was awake and alert with enlarged, red, but non-obstructing tonsils.  Id. at 71–72.  He diagnosed her with a viral syndrome.  Id. at 72.

On June 5, 2010, S.M. saw Dr. Jacques Edouard Etienne, a pediatrician.  Id. at 75–76.  She had the onset of thrush two days previously.  Id. at 75.  On physical examination, she had white oral plaques.  Id.  She was alert and oriented.  Id.  Dr. Etienne diagnosed S.M. with candidiasis and prescribed oral Nystatin.  Id. at 76.

On October 22, 2010, S.M. saw Dr. Patrick J. Murray, an orthopedist, because of her toe-walking and knee-walking.  Med. recs. Ex. 7, at 3–5.  His report notes that S.M. had never been diagnosed with a significant problem.  Id. at 3.  She had reached all her developmental milestones, according to her mother.  Id.  S.M. had a normal gait and was awake and alert.  Id. at 4.  She had no complaints and did all her activities without complication.  Id. at 5.  Dr. Murray noted that S.M. should outgrow her issues.  Id.

On October 29, 2010, S.M. saw Dr. David M. Merer, an ear, nose, and throat specialist.  Med. recs. Ex. 3, at 3.  S.M. had a very congested nose.  Id.  She was not tired during the day and snored at night.  Id.  Dr. Merer noted that S.M. had excellent language development.  Id.

On November 5, 2010, S.M. was evaluated by Ms. Margaret Treanor, who found that S.M. did not qualify for Early Intervention Services.  Med. recs. Ex. 6, at 5, 8.

On January 20, 2011, S.M. saw Dr. Iris E. Schlesinger, a pediatric orthopedist and orthopedic surgeon for a consultation.  Med. recs. Ex. 3, at 5.  S.M. had been walking on her knees since she was fifteen months of age.  Id.  She could walk on her feet, but usually was on her toes.  Id.  She was flat-footed infrequently.  Id.  S.M. said "tons of words" and repeated everything.  Id.  The primary issue was S.M. really had no need to walk on her feet since she was so good at getting around on her knees.  Id.

On March 15, 2011, S.M. saw her treating pediatric neurologist, Dr. Stanley Rothman.  Med. recs. Ex. 9, at 7.  Her parents stated S.M.'s reaction to MMR vaccine lasted three months.  Id.  Petitioners were concerned that S.M. had autism.  Id.  Dr. Rothman did not diagnose S.M. with a neurologic disease.  Id.

On April 14, 2011, S.M. returned to Dr. Schlesinger, who noted S.M. was walking one month previously.  Med. recs. Ex. 12, at 5.  Her parents wrapped her knees, and she started

3

walking.  Id.  On physical examination, S.M. was walking and running.  Id.  Her feet have normal arches and normal muscle tone.  Id.  S.M. was speaking quite well.  Id.  She had mild pronation but did not need orthotics.  Id.

## DISCUSSION

Petitioners allege that S.M. had a Table encephalitis.  Part 42 of the Code of Federal Regulations, § 100.3(a), lists a Table encephalopathy or encephalitis occurring within five to fifteen days of vaccination.  42 C.F.R. § 100.3(a) (2011).  However, under the qualifications and aids to interpretation in part (b), an acute encephalopathy is "indicated by a significantly decreased level of consciousness lasting for at least 24 hours."  42 C.F.R. § 100.3(b)(2)(A).  A significantly decreased level of consciousness is indicated by "[d]ecreased or absent response to environment . . .; [d]ecreased or absent eye contact . . .; or [i]nconsistent or absent responses to external stimuli."  42 C.F.R. § 100.3(b)(2)(D)(1), (2), (3).

S.M. did not have a significantly decreased level of consciousness lasting for at least twenty-four hours.  She was drinking, eating, alert, not lethargic, consolable, able to maintain eye contact, active, awake, and appeared well.  Not one doctor diagnosed her with either encephalopathy or encephalitis.  S.M.'s condition does not satisfy the requirements of a Table encephalitis.

However, petitioners have the alternative of proving that MMR vaccine caused in fact S.M. to have encephalitis.  To satisfy their burden of proving causation in fact, petitioners must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury[,]" the logical sequence being supported by "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

Althen, 418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioners' affirmative duty to show actual or legal causation."  Grant, 956 F.2d at 1149.  Mere temporal association is not sufficient to prove causation in fact.  Id. at 1148.

4

There is nothing in these medical records to substantiate that S.M. had encephalitis. She did not have a significantly decreased level of consciousness. She was feverish, irritable, and mildly distressed. But there is no indication whatsoever in the medical records that S.M. had anything wrong with her neurologically, and no doctor diagnosed her with a neurologic illness. "Encephalitis" means inflammation of the brain.[2] S.M. had no symptom indicative of encephalitis. The Vaccine Act does not permit the undersigned to rule for petitioners based on their claims alone, "unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1) (2012).

Petitioners may have the impression that S.M.'s knee-walking was related to her alleged vaccine reaction, but no doctor has substantiated that view. No one regarded her knee-walking as anything other than a personal preference. When S.M.'s parents wrapped her knees, S.M. chose to walk and had no problems doing so.

The Federal Circuit has emphasized that special masters are to consider seriously the opinions of treating physicians. Broekelschen v. Sec'y of HHS, 618 F.3d 1339, 1347 (Fed. Cir. 2010); Andreu v. Sec'y of HHS, 569 F.3d 1367, 1375 (Fed. Cir. 2009); Capizzano v. Sec'y of HHS, 440 F.3d 1317, 1326 (Fed. Cir. 2006). The doctors who treated S.M. opined that she had a viral syndrome but also entertained that she may have reacted adversely to her MMR vaccination. None of them described that reaction as neurological, and none of them ascribed her knee-walking to her MMR reaction.

If one looks solely at the April 2010 rash, fever, and irritability as S.M.'s reaction to MMR vaccine, that reaction was not long enough to warrant compensation under the Vaccine Act. The Vaccine Act requires that a vaccine reaction and its sequelae last more than six months. 42 U.S.C. § 300aa-11(c)(1)(D)(i). There is no medical record beyond April 2010 that substantiates a reaction to MMR vaccine. Petitioners themselves described S.M.'s reaction to MMR vaccine as lasting three months. In the history petitioners gave to S.M.'s treating pediatric neurologist, Dr. Stanley Rothman, on March 15, 2011, they stated S.M.'s reaction to MMR vaccine lasted three months. Med. recs. Ex. 9, at 7. Petitioners were concerned that S.M. had autism. Id. Dr. Rothman did not diagnose S.M. with a neurologic disease, id., and no one has diagnosed S.M. with autism.

Petitioners have not satisfied the three prongs of Althen in that they have not presented a credible medical theory explaining how MMR could cause knee-walking or that there is a logical sequence of cause and effect showing that MMR did cause S.M.'s knee-walking. Petitioners have not proven that S.M. had a Table encephalitis or a cause-in-fact encephalitis, nor have they provided a basis for linking S.M.'s transient reaction to MMR to her knee-walking. Thus, petitioners have not made a prima facie case of causation.

---

[2] Dorland's Illustrated Medical Dictionary 612 (32d ed. 2012).

On November 4, 2013, the undersigned issued an Order to Show Cause for petitioners to show why this case should not be dismissed. On November 25, 2013, petitioners filed a Notice to Withdraw Petition, which the undersigned interprets as a motion to dismiss. The undersigned **GRANTS** their motion to dismiss and cancels the telephonic status conference set for **Thursday, December 5, 2013, at 11:30 a.m. (EST)**.

This petition is hereby **DISMISSED** for failure to make a prima facie case.

## CONCLUSION

Petitioners' petition is **DISMISSED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

November 25, 2013           s/Laura D. Millman
DATE           Laura D. Millman
         Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.