# United States Court of Appeals
# for the Federal Circuit

---

**STACEY JAMES-CORNELIUS, ON BEHALF OF HER MINOR CHILD, E. J.,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2019-2404

---

Appeal from the United States Court of Federal Claims in No. 1:17-vv-01616-LKG, Judge Lydia Kay Griggsby.

---

Decided: January 8, 2021

---

ANDREW DOWNING, Van Cott & Talamante, PLLC, Phoenix, AZ, argued for petitioner-appellant.

JULIA COLLISON, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, ALEXIS B. BABCOCK, C. SALVATORE D'ALESSIO, CATHARINE E. REEVES.

---

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Appellant Stacey James-Cornelius challenges the decision of the United States Court of Federal Claims affirming the Special Master's denial of attorneys' fees for her vaccine injury compensation claim. Ms. James-Cornelius contends that the Special Master erred in concluding she had no reasonable basis for her claim. We conclude that the Special Master failed to consider relevant objective evidence in conducting her reasonable basis analysis. We thus vacate the denial of fees and remand for further proceedings.

## BACKGROUND

Ms. James-Cornelius filed a petition with the United States Court of Federal Claims ("Claims Court") for vaccine injury compensation under the National Vaccine Injury Compensation Program. Ms. James-Cornelius alleged that her seventeen year old son, E.J., had suffered from autonomic dysfunction (i.e., dysautonomia), postural orthostatic tachycardia syndrome ("POTS"), and other symptoms as a result of receiving three shots of the human papilloma virus ("HPV") vaccine, Gardasil®. J.A. 17–24. Ms. James-Cornelius's October 27, 2017 petition, accompanied by sworn affidavits from her and her son, alleged that E.J. was administered doses of the Gardasil® vaccine on October 30, 2014, December 23, 2014, and May 27, 2015. *Id.* at 17, 26–27, 31–32. Within a few days after receiving his first HPV vaccine on October 30, 2014, E.J. felt ill and fatigued, and soon began experiencing severe headaches and vomiting three to four times per week. *Id.* at 18–19, 26, 31. After his second dose on December 23, 2014, his symptoms progressed. His headaches turned to severe migraines accompanied by vomiting and sensitivity to light. *Id.* at 19–20, 27, 32. In April 2015, E.J. was diagnosed with mononucleosis, and by early May 2015, he was confirmed as cleared of his infection. *Id.* at 20, 27, 32.

According to the petition and the related affidavits, after E.J. received his third dose of Gardasil® on May 27, 2015, his body pains and vomiting worsened again. *Id.* at 20–21, 27–30, 32–33. Prior to this last dosage, E.J. vomited seven to fifteen times per day, which increased after the third dose to a range of twenty to thirty-two times per day. *Id.* at 20, 27–28, 32–33. E.J. stated in his affidavit that he was "always dizzy" and fainted several times while running. *Id.* at 27. E.J. also stated his bones "felt like they were breaking every time [he] walked." *Id.* He also began to experience diarrhea and stomachaches. *Id.* at 29. E.J. alleged that for many months thereafter he continued to suffer from debilitating symptoms, including dizziness while using the stairs, fainting, weakness, pain, and vomiting that prevented him from attending school and participating in regular activities. *Id.* at 20–22, 27–30, 32–33.

In further support of the petition, Ms. James-Cornelius submitted medical records dated between December 2014 and April 2016, which are summarized in the Special Master's decision. *Id.* at 71–73. The records confirmed the dates of E.J.'s three Gardasil® vaccinations. *Id.* at 71–72. While there are no records of any medical visits between his first and second vaccinations, the records document his diagnosis with mononucleosis in April and early May of 2015. *See id.*

E.J.'s medical records also document a series of medical visits, symptoms, and diagnoses after his third Gardasil® vaccination in May 2015. For example, on "June 18, 2015, E.J. was seen by a nurse practitioner for 'abdominal pain, a change in bowel habit, coughing, headaches and a sore throat.'" *Id.* at 72. The nurse practitioner diagnosed him with "a sore throat, pharyngitis, and bilateral thoracic back pain." *Id.* Two months later, on August 11, 2015, E.J. visited the emergency room after suffering from "headaches, vomiting, diarrhea, back pain, muscle aches and lightheadedness" for one week, and he was diagnosed with malaise and fatigue. *Id.* On September 7, 2015, E.J. returned to

the emergency room. *Id.* The physician noted that he may be suffering from "prolonged sequela from mononucleosis," but he was discharged the same day after "reassuring" test results. *Id.* On January 11, 2016, E.J. was seen by his former care provider, Dr. Kim, for fever, back pain, nausea, vomiting, diarrhea, leg pain, light sensitivity, and episodes that felt like his "heart was skipping." *Id.* On January 22, 2016, E.J. was seen by a cardiologist for syncope during or immediately after exercise. *Id.* The summary of that visit referenced a previous tentative diagnosis of POTS. The cardiologist indicated his impressions that E.J. had been experiencing "syncope, neurocardiogenic ('POTS')." *Id.*

On January 29, 2016, E.J. visited Dr. Kim again and complained of vomiting, weakness, fatigue, and back pain. *Id.* at 67. Dr. Kim's visit summary contained the note, "??VAERS" (the acronym for the Vaccine Adverse Event Reporting System), next to a similar note including question marks next to the phrase, "chronic fatigue syndrome." *Id.* at 67.

E.J.'s medical visits and diagnoses continued over the following months. On February 3, 2016, E.J. went to the emergency room due to vomiting. *Id.* at 72–73. E.J.'s medical tests were "unremarkable," and the hospital discharged him on the same day. *Id.* On February 9, 2016, E.J. visited a new cardiologist for "syncope and question of POTS" and underwent a tilt-table test. *Id.* at 73. On April 18, 2016, E.J. followed up with the cardiologist, who explained that the tilt-table test's results were unremarkable. *Id.* Based on E.J.'s history, physical examination, and the tilt-table test results, the cardiologist diagnosed him with dysautonomia. *Id.*

In addition to these medical records, Ms. James-Cornelius's petition identified three medical articles hypothesizing that HPV vaccines, including Gardasil®, can cause dysautonomia and POTS. *Id.* at 22–23. The petition also alleged that the increasing severity of his symptoms after

receiving subsequent doses of the Gardasil® vaccine is "evidence of re-challenge" and that the pattern of worsening reactions is "strongly probative of a causal relationship" between the vaccine and E.J.'s symptoms. *Id.* at 23. Further, the petition alleged symptoms such as headache and syncope, *id.* at 71–73, symptoms listed in the Gardasil® package insert as potential side effects associated with vaccine administration, Appellant's Br. 25.

After filing the petition, Ms. James-Cornelius and her attorneys unsuccessfully attempted to obtain additional medical records relating to urgent care visits that Ms. James-Cornelius believed took place between E.J.'s first and second vaccinations. *Id.* at 58–60. After she sought and obtained additional time to file the outstanding medical records, she moved to dismiss her petition. *Id.* at 41–42. She explained in her motion that she and her counsel had worked unsuccessfully to obtain the missing records and that "an investigation of the facts ha[d] demonstrated that she [would] likely be unable to prove that she [was] entitled to compensation in the Vaccine Program." *Id.* at 41–42.

After the dismissal, Ms. James-Cornelius sought $17,111.12 in attorneys' fees and costs under 42 U.S.C. § 300aa-15(e)(1), asserting that she had filed her petition in good faith and with a reasonable basis. *Id.* at 68–69. The Special Master denied the request, concluding that Ms. James-Cornelius's petition lacked a reasonable basis. *Id.* at 68–76. The Special Master noted that Ms. James-Cornelius and her counsel had discussed the need to obtain missing medical records for months before filing the petition and had found that the medical records she filed were insufficient to establish that she had a feasible claim. *Id.* at 74–75. The Special Master also reasoned that the affidavits provided by Ms. James-Cornelius and E.J. did not constitute objective evidence supporting a reasonable basis, but instead reflected only a subjective belief that

E.J. was injured by the vaccine. *Id.* at 75. The Claims Court affirmed the denial of attorneys' fees. *Id.* at 1.

Ms. James-Cornelius appeals the Claims Court's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(3) and 42 U.S.C. § 300aa-12(f).

## DISCUSSION

We address three main arguments raised by Ms. James-Cornelius. First, Ms. James-Cornelius contends that an express medical opinion was not required for her to satisfy the reasonable basis standard for attorneys' fees. Appellant's Br. 21, 28–29. Second, she argues that the affidavits she submitted in support of her petition provide objective evidence and should not be deemed entirely subjective in nature. *Id.* at 30–31; Reply Br. 3 n.1. Third, she contends that efforts made by her counsel to obtain additional medical records do not evince a lack of a reasonable basis for the petition. Appellant's Br. 17–23.

Following receipt of a petition for compensation under the National Vaccine Injury Compensation Program, the Claims Court designates a special master to issue a decision on whether compensation should be provided and, if so, the amount of the compensation. 42 U.S.C. § 300aa-12(d). The Claims Court has jurisdiction to review the special masters' decisions. *Id.* § 300aa-12(e)(2). The Claims Court may uphold the special master's findings of fact and conclusions of law, set aside findings of fact or conclusions of law that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or remand the petition to the special master for further action as directed by the Claims Court. *Id.* If the petitioner does not seek review by the Claims Court, or if the Claims Court upholds the special master's decision, then the Claims Court enters judgment in accordance with the special master's decision. *Id.* § 300aa-12(e)(3).

This Court has jurisdiction to review the judgment issued by the Claims Court. *Id.* § 300aa-12(f). Specifically, we review a special master's denial of attorneys' fees and costs under the same standard as the Claims Court and will affirm unless the special master's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Cottingham on Behalf of K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345 (Fed. Cir. 2020) (citation omitted); *see also* 42 U.S.C. §§ 300aa-12(e)(2)(B). We review de novo a special master's application of the law. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).

When a petitioner is denied compensation for a claim, she may still obtain compensation to cover reasonable attorneys' fees and other costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360–61 (Fed. Cir. 2012). But even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees. *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362.

After briefing but before oral argument in this appeal, this court issued its decision in *Cottingham*, addressing the standard for determining whether a claim has a "reasonable basis" for attorneys' fees purposes. 971 F.3d at 1346. Like Ms. James-Cornelius here, the petitioner in *Cottingham* filed a claim for injuries allegedly related to the Gardasil® vaccine and later voluntarily moved to dismiss her claim. *Id.* at 1341. In *Cottingham*, we reiterated our prior holding in *Simmons* that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination. *See id.* at 1344 (citing *Simmons*, 875 F.3d at 635). We also explained that the quantum of objective evidence

needed to establish reasonable basis for a claim, including causation, is "lower than the preponderant evidence standard required to prove entitlement to compensation," but "more than a mere scintilla." *Cottingham*, 971 F.3d at 1346. Applying those principles, we concluded that the special master clearly erred in finding "no evidence" of causation after overlooking objective evidence in the record. *Id.*

The parties disagree about *Cottingham*'s effect on this case. While Ms. James-Cornelius contends that *Cottingham* requires remand here, the Government maintains that, even under *Cottingham*, the Special Master's decision remains adequately supported by the record. We agree with Ms. James-Cornelius and vacate the Special Master's denial of attorneys' fees for the following reasons.

First, the Special Master emphasized the absence of any express medical opinion on causation. J.A. 74 ("None of E.J.'s medical providers associated his symptoms with his vaccinations."). But absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts. *See Cottingham*, 971 F.3d at 1346 (explaining that medical records paired with the vaccine's package insert constituted objective medical evidence that may support finding a reasonable basis of causation). Further, for purposes of establishing a reasonable basis for a claim, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." *Id.*

E.J.'s medical records here provide factual support for Ms. James-Cornelius's reasonable basis claim even in the absence of an express medical opinion on causation. The records showed that E.J. experienced a series of symptoms after receiving Gardasil® vaccinations, *see, e.g.*, J.A. 71–73, including headache and syncope, adverse reactions recited

in the vaccine's package insert, Appellant's Br. 25. The petition further alleged that the increase in his symptoms' severity after his third dose suggested a "rechallenge," which has been recognized as a form of causation evidence. J.A. 23; *see, e.g., Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1322 (Fed. Cir. 2006) (noting the special master's reliance on evidence of a rechallenge, which occurs when "a patient who had an adverse reaction to a vaccine suffers worsened symptoms after an additional injection of the vaccine"). The petition also documents a medical diagnosis of dysautonomia and a working diagnosis of POTS for E.J.'s symptoms, as well as three medical journal articles allegedly hypothesizing that these diseases can be caused by the Gardasil® vaccine. J.A. 22–23. Further, at least one physician, Dr. Kim, wrote "??VAERS" in a medical report, suggesting Dr. Kim's belief that E.J.'s vaccines could have caused his symptoms. *Id.* at 67. Notably, the Special Master did not refer to Dr. Kim's note in her overview of E.J.'s medical history following E.J.'s third dose of the vaccine. *See id.* at 72. The Special Master thus overlooked that fact in reaching the conclusion that "[n]one of E.J.'s medical providers associated his symptoms with his vaccinations." *Id.* at 74. This record reflects evidence that could support finding a reasonable basis for a causal relationship between vaccination and symptoms. Under these circumstances, the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.

Second, the Special Master refused to consider the affidavit testimony of Ms. James-Cornelius and E.J. on the basis that a petitioner's affidavit can never constitute objective evidence. *See id.* at 75 ("It is established in the Program that a petitioner's own statements are not 'objective' for purposes of evaluating reasonable basis."). While lay opinions as to causation or medical diagnosis may be properly characterized as mere "subjective belief" when the witness is not competent to testify on those subjects, the

same is not true for sworn testimony as to facts within the witness's personal knowledge, such as the receipt of a vaccine and the timing and severity of symptoms. *Cf.* FED. R. CIV. P. 56(c)(4) (allowing parties to support or oppose a motion for summary judgment based on affidavits or declarations "made on personal knowledge" that "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); FED. R. EVID. 701 (allowing lay witnesses to offer opinion testimony if it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). Indeed, for many medical symptoms or events—such as a headache and other pain, dizziness, nausea, and vomiting—the patient's or a parent's testimony may be the best, or only, direct evidence of their occurrence. Medical records related to those symptoms would likely be based on the statements of those who experienced them. And while such medical records may indeed serve as important corroborating evidence for evaluating testimony's credibility, we reject the Special Master's broad pronouncement that petitioners' affidavits are categorically "not 'objective' for purposes of evaluating reasonable basis." *See* J.A. 75.

E.J.'s and Ms. James-Cornelius's affidavits provided evidence—separate and apart from any subjective beliefs they may have had about the cause of E.J.'s symptoms—supporting their claim for compensation. For example, the affidavits stated that E.J. had received Gardasil® doses at three times; that he suffered from a set of symptoms that began shortly after he received his first dose; and that those symptoms recurred with increasing severity after each subsequent dose. *See id.* at 26–34. The petition also alleged that these events suggested the occurrence of a challenge-rechallenge event, which has been recognized as a basis for establishing causation. *See, e.g., Capizzano*,

440 F.3d at 1322. When taken together with the corroborating medical records included in the petition and the Gardasil® package insert, the factual testimony provided by E.J. and Ms. James-Cornelius amount to relevant objective evidence for supporting causation. The Special Master's outright refusal to consider this testimony was error.

Third, the Special Master based her decision in part on "counsel's repeated attempts to collect additional records and discuss the Program's burden of proof prior to filing." J.A. 74. The Special Master reasoned that these efforts indicate that the petitioner and her counsel lacked a reasonable basis for her claim before she filed the petition. *Id.* We agree with Ms. James-Cornelius that the Special Master erred in deeming counsel's efforts to collect additional medical records to be evidence that the petition lacked a reasonable basis. Whether a petition sets forth a reasonable basis for a claim "is an objective inquiry unrelated to counsel's conduct." *Simmons*, 875 F.3d at 636; *Cottingham*, 971 F.3d at 1342. Subjective considerations, such as counsel's apparent desire to obtain additional evidence, do not negate the objective sufficiency of evidence presented in support of a claim. *See Cottingham*, 971 F.3d at 1344 (explaining that, unlike the subjective good faith test, "[r]easonable basis, on the other hand, is an objective test, satisfied through objective evidence" (internal citations omitted)). By going beyond the allegations and evidence in the petition, and instead looking to counsel's conduct and state of mind as a sign that a petition may be incomplete, the Special Master misapplied the legal standard for determining a reasonable basis.

For these reasons, we conclude that the Special Master clearly erred when conducting her reasonable basis analysis of Ms. James-Cornelius's claim. Because the decision to deny attorneys' fees rested solely on the absence of a reasonable basis, we vacate that decision and remand for the Special Master to determine, in her discretion, whether attorneys' fees should be granted in this case. In exercising

her discretion, the Special Master must articulate the basis of any discretionary decision to grant or deny fees, keeping in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance. H.R. REP. 99-908, at 22 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 6344, 6363 (stating that the Committee "intends that the court make adequate provision for attorneys' time and that the court exercise its discretion to award fees in non-prevailing, good-faith claims").

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons set forth above, we vacate the Special Master's denial of attorneys' fees and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

## COSTS

Costs to the appellant.