NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**KATHLEEN WYATT,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

_____

2019-2234

_____

Appeal from the United States Court of Federal Claims in No. 1:14-vv-00706-MCW, Senior Judge Mary Ellen Coster Williams.

_____

Decided:  September 8, 2020

_____

BRADEN BLUMENSTIEL, DuPont & Blumenstiel, LLC, Dublin, OH, for petitioner-appellant.

EMILIE WILLIAMS, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by ETHAN P. DAVIS, C. SALVATORE D'ALESSIO, GABRIELLE M. FIELDING, CATHARINE E. REEVES, JENNIFER LEIGH REYNAUD.

_____

Before REYNA, CLEVENGER, and CHEN, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

Kathleen Wyatt ("Wyatt") filed a claim seeking compensation for injuries allegedly compensable under the National Vaccine Injury Compensation Act, 42 U.S.C. §§ 300aa–1 ("the Vaccine Act"). The Special Master found that Wyatt failed to demonstrate she was entitled to compensation and therefore dismissed the claim. *See Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751 (Fed. Cl. Dec. 17, 2018). Wyatt filed a Motion for Review with the United States Court of Federal Claims (the "Claims Court"). The Claims Court denied Wyatt's Motion for Review. *See Wyatt v. Sec'y of Health and Hum. Servs.*, 144 Fed. Cl. 531 (2019). Wyatt timely appealed from the Claims Court's denial of review. For the reasons discussed herein, we affirm.

BACKGROUND

I

Wyatt received a Fluarix influenza vaccine on October 1, 2012. *Wyatt*, 2018 WL 7017751, at *7. Prior to the vaccination, Wyatt was described as having a physically and mentally active lifestyle. *Id.* at *6. Wyatt worked as a physical therapist, which required her to use her hands when working with clients and performing other day-to-day tasks. *Id.* at *7.

After receiving her vaccination, Wyatt began to experience hand and wrist discomfort, progressing from her left hand to her right hand. *Id.* The exact date of onset of these symptoms is disputed, though Wyatt asserted that it was the day after her vaccination. *Id.* Wyatt's symptoms further progressed to discomfort in her feet and lower legs. *Id.* Wyatt's daughters recall their mother experiencing post-

vaccination pain and discomfort during a visit with them a week after receiving the vaccine. *Id.*

Wyatt returned to work on October 15, 2012 after the visit with her daughters and identified her symptoms to her supervisor. *Id.* at *8. She also informed her workplace nurse who, on October 16, 2012 filed a Vaccine Adverse Event Report with the Center for Disease Control on her behalf. *Id.* The report identified October 10 as the onset date of Wyatt's symptoms. *Id.* at *8. Wyatt saw her treating physician, Dr. MacCallum, who indicated her symptoms began two weeks before her October 16 visit. *Id.* Dr. MacCallum referred Wyatt to a rheumatologist, Dr. Lumapas, after antinuclear antibody ("ANA") and parvovirus tests used to diagnose autoimmune disorders came back positive. *Id.*

Wyatt fell down the stairs, injuring both ankles on October 28, 2012 and subsequently began seeing an orthopedist, Dr. Corn, in November 2012. *Id.* at *8–9. During her visits with Dr. Corn, Wyatt did not complain about continuing pain in her hands and wrists. *Id.* at *9. She continued attending orthopedic appointments for her ankles in November and December. *Id.* Wyatt did not go to work while recovering from her fall and was cleared by Dr. Corn to return to work with some restriction in January 2013, and with no restriction in February 2013. *Id.* at *9–10. Wyatt returned to work on January 11, 2013. *Id.* at *10. Before returning to work, Wyatt presented to Dr. Lumapas on January 3, 2013 complaining of joint pain in her hands and wrists. *Id.* at *9. Wyatt again had a positive ANA test and a low white blood cell count, though Dr. Lumapas was unsure whether Wyatt's symptoms were caused by the October flu shot. *Id.* at *10. Wyatt also presented to Dr. MacCallum on January 14, 2013 complaining of pain in her hands and wrists that had persisted since her flu shot. *Id.* at *10. Dr. MacCallum opined that Wyatt developed polyarthritis following her flu shot. *Id.* In a January 17, 2013

visit to Dr. Lumapas, the doctor noted that Wyatt's symptoms were resolved. *Id.* at *11.

Wyatt visited Dr. MacCallum again in September 2013 but did not complain about any joint pain during the visit. *Id.* at *11. Wyatt's next complaints of joint pain to a physician did not arise until February 2014. *Id.* at *12. In December 2015, Wyatt saw Dr. Saltis, a neurologist, who opined that Wyatt had no swelling in her joints and a normal range of motion. *Id.* Wyatt saw Dr. MacCallum again in 2016, but not for treatment. *Id.* at *13. At that time, Dr. MacCallum wrote a letter confirming his previous diagnosis of polyarthritis. *Id.*

In addition to submitting the records of these visits with her treating physicians, Wyatt also submitted an expert report from Dr. DeMio, who never treated Wyatt. *Id.* at *18–19. Based on Wyatt's medical history, her statements, and an examination of Wyatt, Dr. DeMio concluded that Wyatt suffered from Guillain-Barré Syndrome ("GBS"). *Id.* at *19.

II

In 2014, Wyatt filed a timely petition pursuant to the Vaccine Act, alleging that she received a Fluarix vaccine on October 1, 2012 and subsequently experienced joint pain and weakness in her hands, wrists, feet, and ankles. *Id.* at *1. Throughout 2015 and 2016, Wyatt filed records and a hearing was held in November 2017. *Id.* at *2–5. The Special Master assigned to Wyatt's case analyzed whether Wyatt had proved (1) an identifiable and definite injury, (2) that the injury lasted at least six months, and (3) whether the vaccine was the cause of the injury.[1] *Id.* at *20.

---

[1]    For a Vaccine Act claim with an injury not included in the vaccine's table, a petitioner is required to show she

The Special Master found that Wyatt failed to prove a definite injury despite "a host of symptoms." *Id.* Although the Special Master found that Wyatt experienced some joint pain and weakness, the Special Master found that Wyatt had not identified a definitive injury because none of her treating physicians diagnosed her with GBS or any other definitive injury. *Id.* at \*20–21. Furthermore, the Special Master found the expert testimony of Dr. DeMio unpersuasive because Dr. DeMio's opinion was rendered years after the injury and because Dr. DeMio had questionable qualifications as an expert. *Id.* at \*21–22. The Special Master also found that Wyatt failed to demonstrate she suffered from an injury for at least six months because Dr. Lumapas stated Wyatt's symptoms resolved by January 2013 and Wyatt produced no medical records between January 2013 and April 2015. *Id.* at \*22–23.

The Special Master also found that Wyatt failed to prove causation for her GBS claim, which at the time Wyatt brought her claim was not included in the Fluarix vaccine table,[2] or for any other injury. *Id.* at \*23–24. First, the Special Master found that although GBS was a medically plausible injury, by nature of its later addition to the vaccine table, Wyatt failed to demonstrate any other medically plausible injury. *Id.* Furthermore, Wyatt failed to establish a cause and effect between the vaccine and her symptoms. *Id.* at \*24–25. Lastly, Wyatt failed to prove a

---

suffered from an identifiable injury that lasted six months and was caused by the vaccine. 42 U.S.C. § 300aa–11(c); *Lombardi v. Sec'y of Health & Hum. Servs.*, 656 F.3d 1341, 1353 (Fed. Cir. 2011). For an injury included in the vaccine's table, causation is presumed. *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006).

[2] GBS was added to the vaccine table in December 2017. *Id.* at \*24.

proximate temporal relationship between the vaccine and her symptoms because their onset was uncertain. *Id.* at *25–26.

The Special Master therefore found Wyatt failed to show entitlement to compensation and dismissed the petition. *Id.* at *26.

### III

Wyatt filed a Motion for Review of the Special Master's decision on January 16, 2019, which the Claims Court denied, upholding the factual findings of the Special Master. *Wyatt*, 144 Fed. Cl. at 532. The Claims Court held that the Special Master's findings were not arbitrary and capricious after finding that, because no treating physician diagnosed Wyatt with GBS, Wyatt failed to prove a defined injury. *Id.* at 537–38. Furthermore, the Claims Court found that the Special Master properly dismissed Dr. DeMio's expert opinion. *Id.* at 539. The Claims Court also determined that the Special Master reasonably found that Wyatt's injury did not last at least six months. *Id.* at 539–40. Having determined that Wyatt did not prove an identifiable injury lasting at least six months, the Claims Court did not reach the question of whether Wyatt proved causation. *Id.* at 540.

Wyatt appeals from the Claims Court's denial of review. We have jurisdiction to review the Claims Court's final judgment under 42 U.S.C. § 300aa–12(f).

### DISCUSSION

We review the Claims Court's decision in a Vaccine Act case *de novo*, "applying the same standard of review as the Court of Federal Claims applied to its review of the special master's decision." *Griglock v. Sec'y of Health & Hum. Servs.*, 687 F.3d 1371, 1374 (Fed. Cir. 2012) (citation omitted); *see also Paluck v. Sec'y of Health & Hum. Servs.*, 786 F.3d 1373, 1378 (Fed. Cir. 2015). "We owe no deference to the trial court or the special master on questions of law, but

we uphold the special master's findings of fact unless they are arbitrary or capricious." *Lozano v. Sec'y of Health & Hum. Servs.*, 958 F.3d 1363, 1368 (Fed. Cir. 2020) (citing *Griglock*, 687 F.3d at 1374). "[A]lthough we are reviewing as a matter of law the decision of the Court of Federal Claims under a nondeferential standard, we are in effect reviewing the decision of the Special Master under the deferential arbitrary and capricious standard on factual issues." *Griglock*, 687 F.3d at 1374 (internal citations omitted).

Vaccine Act claims may allege either "Table" or "off-Table" injuries, depending on whether the injury is listed in the vaccine table for the vaccine alleged in the petition, and whether the injury occurred within the given time period of the table. 42 U.S.C. § 300aa-11(c)(1)(C)(i); *Capizzano*, 440 F.3d at 1320. Where a petitioner has suffered a "Table" injury, the vaccine is presumed to be the cause of the injury. *Capizzano*, 440 F.3d at 1320. Where a petitioner has suffered an "off-Table" injury, including injuries not on the vaccine table and injuries on the vaccine table but that occurred outside the time period specified on the table, a petitioner must prove by a preponderance of the evidence that the vaccine was a cause of the alleged injury. 42 U.S.C. § 300aa–11(c)(1)(C)(i); *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1346 (Fed. Cir. 2010).

In assessing a Vaccine Act claim, the Special Master must first "determine what injury, if any, was supported by the evidence presented in the record." *Lombardi*, 656 F.3d at 1353. Next, the Special Master must determine whether the injury lasted at least six months. 42 U.S.C. § 300aa-11(c)(1)(D)(i); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). Finally, if the Special Master determines the petitioner suffered an injury and that it lasted at least six months, the Special Master must apply the *Althen* test to determine whether the injury was caused by the vaccine. *Lombardi*, 656 F.3d at 1353; *Althen*

*v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1247, 1278 (Fed. Cir. 2005).

Because analysis of causation in a Vaccine Act case is highly dependent on and relative to the injury suffered by the petitioner, a petitioner is required to show he or she suffered from a defined injury. *Broekelschan v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1345–46 (Fed. Cir. 2010). Identification of the petitioner's injury is a prerequisite to causation analysis. *Id.* at 1346; *Lombardi*, 656 F.3d at 1352. Thus, the petitioner must show she suffered from a medically recognized injury, rather than a mere symptom of an unknown injury. *Lombardi*, 656 F.3d at 1353.

Wyatt's claim identifies two potential injuries: GBS and polyarthritis. We will address each in turn.

## I

The Special Master found that Wyatt failed to meet her burden of proof to demonstrate she suffered from GBS. *Wyatt*, 2018 WL 7017751, at *20. For the reasons discussed herein, we hold that the factual findings of the Special Master regarding GBS are not arbitrary and capricious.

In alleging that she suffers from GBS, Wyatt relied on the expert report of Dr. DeMio, who was not Wyatt's treating physician. A special master is entitled to "require some indicia of reliability to support the assertion of [an] expert witness," such as Dr. DeMio. *Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1324 (Fed. Cir. 2010). The Special Master in this case found that Dr. DeMio was not reliable. This finding is supported by the evidence. Dr. DeMio was the only doctor to diagnose Wyatt with GBS. Dr. DeMio was not Wyatt's treating physician, however, and based his opinion only on the medical history he received from Wyatt, an examination of Wyatt several years after her vaccination, and a review of her other medical records. Dr. DeMio did not conduct any of his own tests

to verify his diagnosis.  Moreover, the Special Master determined that Dr. DeMio's expert testimony should be given little weight because Dr. DeMio had no specialized training in autoimmune or neurological disorders and had conducted no research in either field.  *Wyatt*, 2018 WL 7017751, at \*22.  In contrast, Wyatt's treating physicians never diagnosed her with GBS, and in fact stated that they did not believe Wyatt ever suffered from GBS.  *Id.* at \*21.  As this court has previously stated, testimony from treating physicians "is 'quite probative' since 'treating physicians are likely to be in the best position to determine whether a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury.'"  *Andreu v. Sec'y of Dep't of health & Hum. Servs.*, 569 F.3d 1367, 1375 (Fed. Cir. 2009) (quoting *Capizzano*, 440 F.3d at 1326).

Accordingly, the Special Master's finding that Wyatt failed to demonstrate she suffered from GBS as a result of her vaccination was not arbitrary and capricious.[3]

---

[3]    Wyatt's GBS claim also fails because the Special Master's finding that Wyatt did not prove she suffered the injury for at least six months is not arbitrary and capricious.  Wyatt failed to produce medical records demonstrating her injury after February 2013.  To the extent that Wyatt produced affidavits to show she continued to suffer an injury, we discern nothing arbitrary or capricious in the Special Master's finding that they are insufficient to prove Wyatt's continued injury.  *See Cucuras v. Sec'y of Dep't of Health & Hum. Servs.*, 993 F.2d 1515, 1528 (Fed. Cir. 1993) (affirming the Special Master's finding that the claims of a petitioner alone are insufficient when contrary to medical records).  Furthermore, Wyatt did not demonstrate that the vaccine caused her to develop GBS.  Although GBS is now a recognized "Table" injury for the Fluarix vaccination, at the time Wyatt brought her claim in 2014, GBS had not yet

II

Although we hold that the Special Master's findings with respect to GBS were not arbitrary and capricious, we find, contrary to the Special Master's findings, that Wyatt provided sufficient evidence to prove that she suffered from polyarthritis after receiving the vaccine. *See Wyatt*, 2018 WL 7017751, at \*21. Dr. MacCallum diagnosed Wyatt with polyarthritis in January 2013 in a letter stating that Wyatt developed polyarthritis after receiving the flu shot in October 2012. Wyatt's records also demonstrate that she was experiencing symptoms of polyarthritis, including experiencing hand and foot pain and upper and lower extremity arthralgias and swelling.

The Special Master concluded that no treating physician diagnosed Wyatt with any identifiable injury or illness related to the flu shot. *Id.* Dr. MacCallum's letters and records, however, demonstrate that he diagnosed Wyatt with polyarthritis, providing a definitive diagnosis of an identified injury. Accordingly, the Special Master's findings regarding whether Wyatt proved that she suffered from polyarthritis are arbitrary and capricious. Polyarthritis is not a "Table" injury and thus would require proof duration of symptoms beyond six months and causation under *Althen*.

The Claims Court's denial of Wyatt's Motion for Review must, nevertheless, be affirmed because the Special Master's finding that Wyatt failed to prove that she suffered

---

been added to the vaccine table. *Wyatt*, 2018 WL 7017751, at \*24. Because GBS is now a recognized table injury, it is a medically recognized theory, but Wyatt still did not prove that her treating physicians associated the flu shot with Wyatt's symptoms, nor did she prove that the onset of her symptoms was temporally related to her vaccination. *See id.* at \*24–26.

from polyarthritis for at least six months is not arbitrary and capricious. As with her GBS claim, the Special Master found that Wyatt failed to prove she suffered from polyarthritis past February 2013. Wyatt presented no medical records from February 2013 until April 2015, and the records dating from April 2015 merely list an adverse reaction to the October 2012 flu shot but do not state that Wyatt continued to experience those symptoms. While Wyatt submitted affidavits from herself and her daughters to show that she continued to suffer from her symptoms in September 2013, we discern nothing arbitrary or capricious in the Special Master's finding that these affidavits are insufficient to prove Wyatt's continued injury when they are contrary to medical records indicating that her symptoms had resolved by February 2013. *Cucuras*, 993 F.2d at 1528; 42 U.S.C. § 300aa–11(c)(3).

Furthermore, the Special Master's finding that Wyatt's claim for polyarthritis also fails because she did not prove causation is not arbitrary and capricious. In order to prove an "off-Table" injury was caused by a vaccine, the petitioner must show that the three *Althen* factors are met: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278. The first factor is demonstrated through "'reputable medical or scientific explanation [,]' *i.e.*, 'evidence in the form of scientific studies or expert medical testimony[.]'" *Id.* (alterations in original) (quoting *Grant v. Sec'y of Health & Hum. Servs.*, 956 F2d 1144, 1148 (Fed. Cir. 1992) (per curiam)). Such a medical theory must be "'logical' and legally probable, not medically or scientifically certain." *Andreu*, 569 F.3d at 1380. Additionally, "neither a mere showing of a proximate temporal relationship between vaccination and injury, nor a simplistic elimination of other potential

causes of the injury suffices, without more, to meet the burden of showing actual causation." *Althen*, 418 F.3d at 1278.

Wyatt does not point to any evidence that shows the Special Master's findings regarding causation were arbitrary and capricious. First, Wyatt presented no evidence that shows a logical medical theory linking polyarthritis to vaccinations. Dr. MacCallum's statements that vaccination could cause polyarthritis were not supported by any additional medical evidence and alone are unpersuasive. Second, to establish a link between the vaccine and her injury, Wyatt points to Dr. MacCallum's assertions that the two were connected. Dr. MacCallum's opinion, however, is juxtaposed with opinions from other treating physicians that did not associate Wyatt's injury with the vaccination. *Wyatt*, 2018 WL 7017751, at *24–25. As a result of these conflicting opinions, the Special Master found that Wyatt failed to demonstrate that the vaccine was logically linked to her injury. The Special Master was entitled to weigh the evidence from multiple sources and find that Dr. MacCallum's statements were less persuasive than the opinions of other doctors. Third, Wyatt failed to demonstrate a clear onset date for her injuries, making it impossible to determine whether injury had a proximate temporal relationship to her vaccination. The evidence identifies several different dates as the onset date for Wyatt's injury, ranging from the day after vaccination to ten days after vaccination. As a result, the Special Master's finding that Wyatt failed to prove her polyarthritis was caused by the vaccine was not arbitrary and capricious.

## CONCLUSION

Although the Special Master's findings that Wyatt failed to prove any identifiable injury were arbitrary and capricious because Wyatt provided evidence that she suffered from polyarthritis, the Special Master's ultimate conclusions were not arbitrary and capricious. The Special Master correctly found that Wyatt failed to prove her

injury lasted at least six months because no medical evidence established Wyatt's continuing injury after January 2013. Furthermore, the Special Master's findings that Wyatt failed to prove the vaccine cause her injury were not arbitrary and capricious because Wyatt failed to establish a logical link between the vaccination and any alleged injury and failed to establish a proximate temporal relationship between the vaccine and her injury.

For the reasons stated above, we uphold the entitlement decisions of the Special Master and the Claims Court. Though the Special Master's determination that Wyatt failed to demonstrate she suffered from any identifiable injury was arbitrary and capricious, the Special Master correctly determined that Wyatt was not entitled to compensation because she failed to prove she suffered an injury for at least six months and failed to prove her injury was caused by the vaccination. We therefore affirm the Claims Court's denial of Wyatt's Motion for Review.

**AFFIRMED**

COSTS

No costs.